For the first order of business, I''ll turn it over to Judge Dyke. Do you have a motion, Judge Brewer? Yes, I do. This morning I moved the admission of Varad Sokondze, I mispronounced it, Sokondze, who is a member of the Bar and Good Standing in the Highest Court of California. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. And firstly, my apologies for messing up your last name, but I''ve only called you by your first all year. It''s a bittersweet moment when we say goodbye to our clerks. We''re happy that they''re moving on to doing great things, and we''re assured that they will, but it''s sad to lose them. Varad''s been a wonderful addition to our chambers all year.  When I asked him any random question about what was going on in any general patent law case around the country, he knew it right off the top of his head, and I don''t quite know how he managed to do that, but he''s never disappointed me. He''s been a wonderful friend to our chambers, and we''re very sad because he''s not only leaving the chambers, but leaving the area. But we look forward to our continued relationship and to his great success as a member of our Bar. Judge Cleveland, shall we grant the motion? With pleasure. I vote in favor of the motion. I have had a chance over the last year to get to know Varad both as a human being, a young man, a human being, and also as a brilliant young lawyer, and it''s a pleasure to have you here, and thank you for your contribution to the court, and please come back and see us on the other side. The motion is granted. We welcome you to the Bar of the Court. Congratulations, and we look forward to seeing you there at the council table. Please raise your right hand. Do you solemnly swear or affirm that you will comport yourself as an attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. We welcome you to the Bar of the United States Court of Appeals. The first case for argument this morning is 14-7027, O'Brien v. McDonald. Mr. Carpenter, welcome. Thank you, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Marcus O'Brien. The Veterans Court in this case erred by using the wrong legal standard when determining whether or not Mr. O'Brien's genetic condition was a disease or a defect. Whether his Leeper's optic atrophy was a genetic condition is simply not the test. The test is whether or not that genetic condition constitutes a disease or a defect. Clearly, if it is a disease, it is compensable. If it is a defect, it is not compensable under VA statutes and regulations. Under the regulation, what's a developmental defect? Wouldn't a developmental defect automatically be a progressive defect? Or not strike a word defect. Wouldn't it always be progressive? No, I don't believe necessarily it would. For example, mental retardation. Mental retardation is static. The IQ is not likely to rise or fall. So it is not a progressive condition. In this case, as comparable to the VA General Counsel's opinion concerning retinitis pigmentosa, this is the type of progressive genetic disease that the VA has recognized as being a disease and not a defect because it worsens over time. So the government could refute that by showing that it was just the normal progress of the disease and they'd have the burden to show that under Wagner, right? Yes. Yes. It was clear error for the Veterans Court to have endorsed the Board's determination that Mr. O'Brien's Leber's optic atrophy was genetic because that was the wrong legal test by the Board. The Board mistakenly relied solely on the fact that Mr. O'Brien's condition was considered to be genetic. The Veterans Court decision is at odds with its own decision in Curran and with this Court's decision in Morris because they applied the wrong legal test in differentiating between a disease and a defect. The test under both Curran and Morris is whether or not the condition presents itself as a disease or a defect. Whether the condition is a disease is a legal question. In this case, the facts are not in dispute that there was a progression. The VA acknowledged this fact in its briefs in this matter, and the Board acknowledged that fact by identifying that at the time of the original decision, while Mr. O'Brien was on active duty, he was prescribed corrective lenses for the worsening of his vision. Within one year of discharge, he was legally blind. That is clear and indisputable evidence of the progression of this disease. And therefore, it should have been considered as a disease, and Mr. O'Brien should have been afforded the benefit of the presumption of soundness. The lower court refused to consider this. If you have a situation, in all cases where there's a progression, is it impossible to conclude that it was a defect as opposed to a disease? In the general counsel's opinions, they say, well, this is a generalization. This test of this, can it get better or get worse, comes out of an old D.C. Circuit opinion somewhere way back. And it sort of just got picked up and sort of found some life in the regulations. But is it your position that anything that is progressive has to be a disease? Yes, Your Honor, because that is the only way to distinguish between those conditions which are not compensable and those conditions which are compensable. I understand that's one way to do it, but I mean, isn't it possible for... The thing that troubled me a little bit with your brief was that you concluded right out of the bat, but without any support, that the issue, the question of whether or not a particular situation is a disease or defect, you said is a legal question. You said that in your brief. You didn't cite any authority. It struck me that it's a quintessential fact question. Well, I don't believe that... Why can't doctors disagree about whether or not a situation that a particular patient has? Which involves some progression. No regression, only progression. Correct. Right? Why that necessarily always has to be a disease as opposed to sometimes a defect. I think it's for the purpose of triggering the presumption of soundness. And the presumption of soundness cannot be... I understand that's what the function of it is, but I'm talking about what happens when the doctors are all sitting around at a conference. For example, here, your client was determined to have a fixed, unchanging subnormal vision, so that his subnormal vision was never going to change. He was never going to get any better. That's correct. The same way as it is with retinitis pigmentosa. It's not ever going to get better. But it progresses along a line in which there is... Why is it necessarily a disease as opposed to a defect, if you start off in life and you never can get any better? You have a fixed... It's sort of like you say, well, you're born with nearsightedness. And you're never going to get any better. That's correct. And that might get worse. One of the specific conditions that's identified in VA regulation, nearsightedness, because that is constant. It is static. In the case of both retinitis pigmentosa and this condition, this condition progressively gets worse. He did not have this condition or have any vision problems prior to entering service. Well, that's... In any defect case, that's the circumstance. Right. And then to answer your... Most defects are not noted on entering the service, right? No. Sometimes they actually do. Many are like this. Many are not. In this particular type of genetic condition, I believe that's correct, particularly when it has shown no symptoms or manifestations. The symptoms and manifestations did begin in service, and then it went along a track that is not necessarily predictable. This is a progressive condition, just like multiple sclerosis is a progressive condition. Take two situations. A situation where somebody has a genetic condition that was going to result in blindness, and the blindness is just going to happen like this at some point in time. But it also has a condition where blindness is going to occur, but it's going to be a progression. Right? Yes. Why should there be compensation in one case and not in the other? What's the rationale for having compensation in the case of the blindness that occurs after a period of time as a result of a genetic defect, as opposed to where you say it just happens once? Well, that argument was rejected as proffered by myself in the Morris case to this court. I'm just asking, what's the rationale? Why should there be a distinction? I do not believe there should be a distinction, but there is a distinction at law. There is a distinction because the defect is not compensable. That's correct. And the difficulty here is deciding how to make both the initial determination as to what we're dealing with, and then if it is a disease, then it has to be afforded the benefit of the presumption of salvage. You still haven't answered my question. You believe that in every instance in which there's a progression, no regression but a progression, no possibility of a regression, those must all be deemed to be diseases, always. No, Your Honor, I don't think I go quite that far. In response to Judge Knight's question, he asked whether or not the VA could produce evidence that this was the natural progression of the disease in order to show by clear and unmistakable evidence to refute the presumption of aggravation during service.  Speed it up if it's a progressive condition. Correct. And that is the circumstance under which the veteran could be compensated as a result of it. If, on the other hand, it's just the result of the natural progression of the disease unaffected by the service, then he can't recover. That would be correct, Your Honor, except that with the benefit of the presumption of soundness, which was the underlying challenge to the decision in 1980, the veteran should have received the presumption that because nothing was noted at entrance, that he was entitled to have the evidentiary burden shifted to the VA. I'm not sure that's right. It does seem to me that there are two presumptions here under Wagner, right? There's the presumption of soundness and there's the presumption of aggravation. It seems to me that where it is a hereditary disease, that that does tend to overcome the presumption of soundness but not necessarily the presumption of aggravation. I would respectfully disagree, Your Honor. The presumption of aggravation is only triggered when the condition is noted at entrance. 1153 does not come into play except as the second prong. No, that's not true. It's also involved where the government has overcome the presumption of soundness on entry into service. Right, but only as to the first prong. Therefore, this case has to be determined under the presumption of soundness, not under the presumption of aggravation. I don't know why that's true. Why is that true? Because 1111 affords the benefit to the veteran that if his or her condition is not noted at entrance to service, then the evidentiary burden shifts to the VA. Yeah, but what the VA has established is that this is a hereditary disease. There's no question about that, right? That's correct, Your Honor. Why doesn't that overcome the presumption of soundness? Put aside the presumption of aggravation for the moment. Because that condition did not exist, in fact, in any way, shape, or form prior to. It hadn't manifested itself. It had not manifested itself. Well, I don't see that that's necessary. Well, that's got to be the distinction, Your Honor. Therefore, there's no other reason to have the presumption of soundness. The presumption of soundness is for things that weren't noted. This could not possibly have been noted because it hadn't manifested itself. We're dealing with the condition. How do you rebut the presumption of soundness? The VA has to come forward with clear and unmistakable evidence to establish two things. First, that the condition existed prior to service. And I do not believe that the mere statement that this is a hereditary condition meets that. If it's hereditary, then it was in the DNA of the inductee when the inductee showed up for his physical. That's right. But it had not manifested itself. It hadn't manifested itself, but it preexisted. No, it did not. It did not preexist as a condition because there were no manifestations. What case says that? That if there's no manifestation, you can't overcome the presumption of soundness by showing that somebody inherently had this problem. There is no case that addresses that specific issue with the exception to the fact that the case law is clear that in order to establish entitlement to a service-connected condition, you have to show the symptoms or manifestations happened during service. It's about what happens during service. And what happened during service is this. It's what happened during service in order to be able to earn your compensation unless you have one of those instances where something happens after service is a tree to go back. But you're just eliding Judge Dyke's question, which is to say, well, so what? That you have to show something in service. Well, I think what Judge Dyke is talking about is whether this is a presumption of soundness case or an aggravation case because the veteran walked into the service with a condition. With all due respect, Your Honor, he did not. There was no medical test. There is no medical evidence that anybody knew that he had this condition. Let's assume there was a case out there like maybe this one might become. It says if you have a hereditary condition, so you are presumed at moment of induction to have that condition. Then there would be no presumption of soundness. No, Your Honor, because under the second prong of the presumption of soundness, the VA is required to presume that during service the preexisting condition was aggravated. But that's the presumption of aggravation. You're mixing up the two. No. Let's assume for the moment that we reject your position and we say, okay, this is a hereditary disease. The trigger for this must have existed before service. Therefore, the fact that it's a hereditary disease overcomes the presumption of soundness. And then we turn to the presumption of aggravation. Then under the 1153 presumption of aggravation, the burden is on the veteran, which is why I believe it's mistaken to take the route that you're suggesting. No, the burden is not on the veteran. Under Wagner, the burden is on the government to overcome the presumption of aggravation. No, because under the case law at the Veterans Court, the Veterans Court in Hunt said that in order to get the benefit of the 1153 presumption of aggravation, the burden is on the veteran to show that there was a worsening of this condition during service. Now fortunately, I believe in this case, he can make that showing by the fact that he was prescribed corrective lenses while on active duty. Was the Hunt case before or after Wagner? It was before. Well, there you go. But Hunt specifically dealt with... Why would you want to argue that the veteran has to prove something which Wagner says the government has to prove? Because when I argue cases before the Veterans Court, Hunt is the case that is thrown up to me that the burden is on me as opposed to the burden is on the VA. Now I'm perfectly happy for this court to clarify that the burden is always on the VA under both of these presumptions. But that's not the way that the Veterans Court applies the law based upon their precedent in Hunt. They do not see Hunt as an aggravation case as being trumped, if you will, by this court's decision in Wagner. That clarity would be extremely helpful. Why don't we hear from the government and we'll restore two minutes of rebuttal. Good morning, Your Honor. May it please the Court. Mr. O'Brien has made several arguments. In your brief, you sort of throw up your hands and say there's no legal principle at issue here. But there is because the general counsel opinion suggests that if something is progressive in nature, it qualifies as a disease rather than a defect. And it says that retinosis pigmentosus is a disease specifically. And how can you possibly distinguish between retinosis pigmentosus and the condition that we have here? Well, Your Honor, the legal conclusion of whether something is What's the difference between the two? The VA general counsel's opinions discuss the difference between a disease and a defect. Now, what's the difference between retinosis pigmentosus and the condition that we have here? Well, Your Honor, although they're both hereditary eye conditions, Leber's optic atrophy is generally characterized by striking males in between the ages of 20 and 30. How is that relevant to whether it's a disease or defect? Well, Your Honor, because the nature of the disease is that it always manifests itself in the same way on a predictable path. So it's retinosis pigmentosus, isn't it? Well, Your Honor, retinitis pigmentosa is a disease that can strike a person along a much longer period of time and has been shown to be susceptible to treatment and potentially to be susceptible to aggravation by service. The nature of Leber's optic atrophy is that it cannot be aggravated by service because it is untreatable and uncurable. Well, but so it's open to you to show that and to overcome the presumption of aggravation, right? Well, No one's saying that the government has to pay out veterans' benefits just because this condition exists. There has to be a determination that was aggravated by service. If it just is the normal progression of the disease explicitly, the VA is not obligated to pay out benefits, correct? Well, Your Honor, Is that correct? In this case, I don't believe so. Is that correct? I don't believe so, Your Honor, because the nature of the defect, Leber's optic atrophy, is static and unchanging once it's been developed. You're not answering my question. My question is, if the government can establish that what happened is just the normal progression of the disease, the Veterans Administration is not liable to pay out veterans' benefits, correct? Correct, Your Honor, although we don't need to get there because the disease is characterized by being fixed and unchanging, and therefore within the exclusions listed in Section 3.303C, developmental and congenital defects are both excluded from the application of the presumption of soundness and the presumption of aggravation. In this case, Leber's optic… But you're just disowning the general counsel's opinions, aren't you? No, Your Honor. Leber's optic atrophy, as a defect, is consistent with those general counsel's opinions, which describe a defect as being something that is generally incapable of deterioration or improvement. In this case, the nature of the condition is static. It's not static. It starts and it gets worse, doesn't it? Respectfully, no, Your Honor. The condition manifests, and during that developmental period, the condition gets worse. But once the condition has manifested, the condition is stable and unchanging. In this case, Your Honor… Well, that would be true of retinitis pigmentosus, too, right? Your Honor, the… Is that not true? It gets worse over a longer period of time and in a different manner. So it's the period of time that it gets worse? I mean, where do you find that in the general counsel's opinion? Your Honor, it's not simply that retinitis pigmentosa gets worse over a longer period of time. The relevant question here is, is the disease or the condition by nature one which can be aggravated by service? Leber's optic atrophy is fixed and unchanging and unable… Where do the general counsel's opinions say it depends on whether it can be aggravated by service? Well, Your Honor, the general counsel's opinions discuss a disease as being something that is capable of improvement or deterioration within the regulation 3.303C. The conditions listed in that regulation… No, but you're not answering my question. The question is, where in the general counsel's opinions does it say it depends on whether it can be aggravated by service? Well, Your Honor, the general counsel's opinions 1199 discusses whether retinitis pigmentosa can be aggravated by service. And in that case, or in that opinion, talks about whether the condition can be aggravated by service and concluded that if you can show that it's aggravated by service, then VA benefits can be granted. There's a reference in 8290, page 52 of the appendix, saying typically in these cases, entitlement service connection should turn on the question of whether manifestations of the disease and service constituted aggravation of the condition. Yes, Your Honor. The relevant question of whether a condition can be aggravated by service is because the regulation excludes several conditions from benefits, including congenital and developmental defects, as well as other conditions, such as refractive errors of the eye and personality disorders and mental deficiencies. And all of those regulations are excluded from benefits because it is axiomatic that they are unrelated to service. But it seems to me we have two choices here in the interpretation. One would be to say if it's progressive, the government has to show that it wasn't aggravated by service. It's just the normal progress of the disease, which essentially is what the veteran here is arguing for. What you say is that it can't be a disease unless it's established that it's something that could be aggravated by service. And I'm just wondering what the support is for that latter proposition. Well, Your Honor, the general counsel's opinions, which describe a disease as being something capable of improvement or deterioration, go hand-in-hand with the question of whether a condition can be aggravated by service. I don't understand that. Something can be progressive even if it couldn't be aggravated, right? Yes, Your Honor. And if the condition by nature cannot be aggravated by service, that's where the definition of defect comes into play. Where does this record establish that this particular condition that we're dealing with here cannot be aggravated by service? Well, Your Honor, in the original 1980 board decision, the board determined that the condition was not a disease or injury within the meaning of Section 3.303c. But you're not answering my question. Where does this record show that this particular disease can't be aggravated by service? The medical opinions state that the diagnosis is fixed and unchanging vision. Once the condition has been developed, it's static. Well, that's true. But up to the point where the loss of vision occurs, what in this record says that the speed at which that happens can't be aggravated by service? The answer is it doesn't say that, right? Well, Your Honor, the board in 2011 made a finding that the condition cannot be aggravated by service. It did? Would you show me that? Your Honor, on strain appendix page 85 to 86, the board discusses whether the condition was aggravated. Where does it say it can't be aggravated by service? It states that the medical... Where are you? Are you on page 85? I'm page 86, the first paragraph of page 86. We're on 86. The first paragraph sentence begins, in fact, we have a medical opinion that specifically states there's no known treatment. And therefore, the preponderance of the evidence refuted the veteran's claim that his eye condition deteriorated because the service department had not provided adequate medical care. Well, that's not equivalent to saying that it can't be aggravated by service to speed it up. There's no known treatment, but that doesn't mean that the conditions of service couldn't aggravate the condition, right? Well, Your Honor, the... Yes? No, Your Honor, I... You have to answer the question. Is the answer that it's possible that there's no known treatment, but it can be speeded up, aggravated by service? No, Your Honor. If a defect cannot be aggravated by... If a defect does not have known treatment, it cannot be aggravated by service. Why is that? Because that's the nature of the condition is that there's no treatment. Well, there's no known treatment for my particular condition, right? So it's just too bad, Ray, you're not going to be able to do anything for you. You know, sorry, don't bother to come back to the infirmary. Why does that mean... Say, for example, it's an eye problem, and there's no known treatment for my declining nearsightedness. But my job in the military requires me to read or use my eyes, and that, I could prove, would aggravate my condition. Well, Your Honor, the condition here at this case causes fixed and unchanging subnormal vision, blindness. That's right. It's never going to get any better. It's fixed, and it's unchanging bad. But that doesn't mean that it won't get worse bad. Well, Your Honor, once the veteran has developed the condition, that condition cannot be treated. It cannot get better. It cannot get worse. That's why, under the general counsel's opinion, sleepers' optic atrophy is appropriately characterized as a defect. And, Your Honor, these questions are factual determinations. Would your condition be aggravated by service if a bullet hit in your eye during service and made you blind? Would your genetic proclivity of blindness be aggravated in service if you were shot in the eye? Well, Your Honor, Yes or no? The Yes or no? Answer that question. Like if you were on the stand, yes or no? Benefits could be granted in that case for it. I'm just asking whether or not it would be aggravated. I don't believe that the bullet itself would be an aggravation of the condition of sleepers' optic atrophy. That would be a separate event that would also independently cause blindness. It's not an aggravation of the hereditary condition. The condition sleepers' optic atrophy is, again, it generally strikes males between the ages of 20 and 30 on a predictable path. And once the condition has developed, it is fixed and unchanging. The same rate of speed in each individual? I won't say the exact same rate of speed for each individual. Right. The answer is no. It varies. Although it's generally much quicker in developing than some other conditions such as retinitis pigmentosa. It's a shorter period of time. Maybe we should close the circle. Mr. Carpenter began his argument by saying, well, the reversible error here on the Q, remember we're in a Q setting, was that the wrong legal standard was applied way back when. And he articulated why that's so. Why don't you tell us why the correct legal standard was applied? You obviously disagree with that. Well, Your Honor, the parties here agree on the legal test to be applied that the general counsel's opinion discussing the difference between a disease and a defect is the correct legal principle. Mr. O'Brien simply disagrees with the outcome of that application of the legal principle. But the application of that law is to the facts of Mr. O'Brien's case. To the question of whether he had the condition of whether the condition was capable of improvement or deterioration, those are factual questions which the board determined. And this court cannot review the medical diagnosis itself. But is the ultimate question of whether a veteran has a defect or a disease, is that a factual question or a legal question? The ultimate determination would be a legal determination, but it's based on factual determination, such as the nature of the condition. In this case, the board made factual determinations that the condition was fixed and unchanging and that it then met the definition of a defect under 3.303C. Well, your point is that if the decision maker uttered the correct law, which I didn't really see it uttered that way, but made a factual error in applying the law, that would be unreviewable? Yes, Your Honor. The legal conclusion is based on the factual determination. That would be unreviewable by this court. The only way in which this becomes a legal interpretation question is if, as Mr. O'Brien suggests, is if this is a bright-line test. Any worsening at all must be characterized as a disease rather than a defect. Well, it doesn't have to be a bright-line test. The question is the correct standard. It may require a factual determination such as whether the disease is progressive or something else, but the legal standard is a legal standard. And we certainly have jurisdiction to determine whether the correct legal standard was applied. What is your view as to what the legal standard should be? The legal standard would be that a condition is a disease if it's capable of improvement or deterioration, and it would be a defect if it's generally not capable of improvement or deterioration. But as the general counsel's opinion stated, this is merely a generalization, and there are other factors that go into the question. And in this case, those factors are factual matters, which the board decided. Mr. O'Brien's reading that any worsening must necessarily require characterization as a disease is at odds with the language of the regulation itself. The regulation discusses both congenital and developmental defects. Congenital defects would be those present from birth, but there are also developmental defects that a person can develop later in life. And under Mr. O'Brien's reading, the act of developing or manifesting that hereditary condition would require it to be a disease, no matter the actual nature of the condition. That reading, Mr. O'Brien's reading just reads the word developmental right out of the regulation. Okay, your time has expired, unless you have a compelling final thought. No, Your Honor. Just for the reasons stated in our brief in here today, we would ask this court to dismiss the appeal for lack of jurisdiction or alternatively to affirm the Veterans Court. Thank you. The government has just indicated to the court that this is in fact a legal question. That legal question is whether or not under the definition of disease and defect, a worsening makes it a disease. That does not necessarily guarantee the veteran an entitlement to compensation, but it does entitle them to the benefit of the presumption of soundness. The VA's entire position, their entire argument today has been upon the fact that it is a defect, therefore it is a bar. But simply making the declaration that it is a hereditary condition is not the legal test. The legal test is whether or not there is or is not a condition which is capable of deterioration. The undisputed facts in this case are that this condition deteriorated. Therefore, he was entitled to the benefit of the presumption of soundness or potentially the presumption of aggravation. Unless there are further questions from the court. Thank you very much, Your Honor. I thank both parties. The case is submitted.